The Chief Justice
delivered the opinion of the Court:
It appears that the plaintiff in this action bought a ticket of the defendant at the Union depot in 'the city of Pittsburgh for the city of Washington. It was a limited ticket, good for one continuous first-class passage from Pittsburgh to Washington, and by the short line only, subject to the conditions, that “ in consideration of the reduced rate at which it is sold, the holder agrees with the respective companies over whose roads such holder is carried, to use this ticket for a continuous passage only on the Pennsylvania Railroad train designated by the punch in the margin leaving the station stamped hereon on the date punched out of the margin hereof, and failing to comply with this agreement either of the companies over whose roads this ticket is issued, may refuse to accept the same and demand the full regular fare, which the holder agrees to pay.
“ The ticket is not transferable and it is void unless officially stamped and dated.
(Signed) J. R. Wood,
Geni Passenger Agt.”
(Indorsed) “Union Ticket Office, June 30, 1886. Depot, Pittsburgh, Pa.”
In the margin “ Fast Line ” is punched.
It appears from the testimony of the plaintiff, whose evidence in this respect is not contradicted, that after he had purchased the ticket, and as he was about putting his change in his pocket, an employee of the road, in the uniform of the Pennsylvania Company, came to him and asked if he was going east; he replied he was, and he was informed that the regular train had left but that they had prepared a special train to carry the passengers who were left and that they were ready to start and were waiting for him. There *3 upon he was conducted through the gate and put upon the special train for Harrisburg, the assurance being that this special train would overtake the regular train at least at Harrisburg if not before that time. He says when they reached Harrisburg, the regular train had left for Baltimore; that he remained for some three or four hours in Harrisburg waiting for the next train for Baltimore, and was then taken by an officer or an employee of the Pennsylvania Company with others to the conductor of the train for Baltimore, who. was informed by this employee that these were passengers who came on the special train and belonged to the regular train which had gone through, and the tickets were accepted by the conductor for their passage to Baltimore. Upon arriving at Baltimore they failed to make connection and he was told that he would have to wait some two or three hours before he could get a train for Washington. He waited until about that time when he was notified that the train was ready to go to Washington, and exhibiting his ticket, he started to go through the gate to the train that he was informed was going to Washington, when he was informed by the gate-keeper that the ticket was not good and that he could not go through. On account of the pressure of passengers going through the gate he stepped back for the time being until the passengers who were going on the train had passed through, and thereupon renewed his conversation with the gate-keeper, and informed the gate-keeper of the circumstances attending his obtaining the ticket. The gate-keeper informed him under what circumstances the ticket would be good; that it should be endorsed by the ticket receiver at Baltimore, but that this officer did not stay at that depot but was at the Calvert Station, one mile and a half away. The train was then about to depart. The gate-keeper testified that it would have taken ordinarily fifteen minutes to telegraph to the ticket receiver at the Calvert Station and get the authority to use this ticket. The plaintiff, after having more conversation, and the gate-keeper still denying him *4 the right to pass through, said: “I have a right to go on that train with this ticket and I propose to go.” Thereupon he started to'go through, the gate then being open, without attempting, so far as the testimony shows, any violence upon the person of the gate-keeper. He testified that the gate-keeper put his hand violently upon his shoulder, pushed him'back so as to unbalance him and immediately closed the gate and prevented his going through. The plaintiff, without attempting retaliation, thereupon went to the ticket office, bought a ticket to Washington and the gate-keeper then let him go through. When he went upon the train the conductor would not recognize the ticket that he had bought in Pittsburgh, which he first presented to him, but required him to present the ticket that he bought in Baltimore for Washington; that before he went to buy the ticket last named, some conversation ensued between the gatekeeper and the conductor, after which the conductor said to him that he would have to buy a ticket to Washington, and when he got to Washington he would take him to the ticket receiver in Washington, where the money that he had paid for his ticket in Baltimore for Washington would be refunded.
The action on the part of the plaintiff is, as set forth in the amended declaration, substantially an action for assault and battery against the Pennsylvania Railroad Company, because of the assault and battery received by the plaintiff from this gate-keeper. The gate-keeper denies that he made any assault upon the plaintiff, says that he did not touch his person, but only shut the gate to prevent him from going through. It is conceded that upon this hearing on appeal it will be presumed that the question as to whether assault was committed was settled by the jury rightly.
The question arose upon the trial whether as a matter of law the plaintiff had a right to go upon that train, and the court charged the jury as follows: “In this' case, I advise you that this plaintiff had the right to go in there, and that while the gate-keeper had the right to arrest him and to *5 stop him, to see about things, he had no right to forcibly, by laying hands on his person, prevent him from going in. He had the right to shut the gate in his face, and for the purposes of this suit, if that is all-he did, there can be no recovery; but he had no right to forcibly restrain him from going in by touching his person. If he did that, the defendant is liable.” So that the court in its charge to the jury held, as a matter of law, that the plaintiff had a right to go upon this train from' Baltimore to Washington upon the ticket which he had purchased in Pittsburgh, and that the gate-keeper had consequently no right to restrain him by the exercise of physical force upon the person of the plaintiff.
Now it is said by counsel for the defense that the gatekeeper had no discretion in the matter; that he had his orders from his superior officers not to allow any one to go through the gate to a train upon a ticket for a particular train after the latter had passed; that if by reason of any circumstances occurring, the party should really be entitled to go on the train, the ticket receiver would give the right by proper indorsement upon the ticket.
It does not seem to be denied, that if this ticket had been presented to the ticket receiver the plaintiff’s right to have the indorsement upon the ticket to go upon that train to Washington would have been recognized. It is said that it was recognized for the fellow-passengers of the plaintiff who came with him from Pittsburgh; that some of them had passed to the Calvert depot instead of going to the Union depot, and had their tickets properly indorsed by the ticket receiver, but the plaintiff testifies that he had no information or suspicion that any such thing was necessary; that he had no idea whatever that his ticket which he had used thus far would not be recognized upon the first train passing from Baltimore to Washington.
Now, it is said further, upon the part of the defence, that the evidence shows that the railroad line from Harrisburg to Baltimore, the Northern Central Railway Company, is a different corporation from the Pennsylvania Road, and *6 that the road from Baltimore to Washington was also controlled by a different company. But the evidence also shows that the party contracted in Pittsburgh for a continuous passage from Pittsburgh to Washington. The Pennsylvania company made this contract with the passenger and for the purpose of his passage to Washington the line is to be treated all the way substantially as the line of the contracting company. We think that it is clearly the law, sustained by ample authority, that under such circumstances each of the companies and their employees are to be treated as the agents and employees of the contracting company. We think that the evidence in this case clearly shows that whatever may have been the power or control of the Pennsylvania Company over the Northern Central Company and the Baltimore and Potomac Company, whether it was such as would under ordinary circumstances make them liable for any default or miscarriage 'of either one of these companies or not, the Pennsylvania Company had such arrangements with them — which arrangements were well understood by the employees and agents of the two connecting companies — that contracts of this character for a continuous passage through from Pittsburgh to Washington were to .be recognized and accepted, and were understood to be valid and obligatory by all the employees and officers of these connecting companies.
That being true, what were the legal rights of the plaintiff in Baltimore with reference to riding upon the train about to start from Baltimore for Washington, on the ticket that he had purchased in Pittsburgh? We think it is very well settled that where a ticket is purchased for a continuous passage over different roads from one point to another, if by reason of any accident, or from any cause whatever, not by the default of the plaintiff or his carelessness or wrong, a company is prevented from making connection and keeping to the letter of its contract in carrying a passenger to his destination, and he is left over, the law is that he has a right to go upon the first train of that company to his *7 point of destination, and we think that was the legal right of the plaintiff in this case and that the gate-keeper had no right whatever to stop him from going, and cannot be justified in committing an assault upon plaintiff under such circumstances. It is true that he may have been discharging his duty according to his instructions, but he should have been instructed that passengers for Washington, who had been left by the regular train at Pittsburgh, had taken a special train, and that in the event of the regular train leaving Baltimore without them they should be conveyed on the next train that went out.
We-think the railroad company was seriously at fault. It was its business to have given the information to the officers at Baltimore and to this gate-keeper. If it was intended that the passengers upon that train from Harrisburg to Baltimore who were going to Washington should see a ticket receiver at Calvert Station in Baltimore,' in order to get their tickets vised, so they could go on to Washington, it should have been announced upon the train by the conductor, or they shopld have been otherwise duly notified.
That this is the custom on this route is clearly shown by the evidence of the gate-keeper, who testifies that it was the custom of the company or of the ticket receiver at Harrisburg, whenever a train was late at Harrisburg, so that passengers for Washington would need to have their tickets endorsed, to telegraph to Baltimore, so that the officers at Baltimore might be advised of that fact, and that when that was done, the gate-keeper always passed passengers with such tickets through.
He says on page 23 of the record, as to passing persons who were late on the main line:
“ Q. What were your orders on that subject? — A. Not to pass any one through the gate on a -ticket like this, unless it was a regular train, unless we got orders from the ticket receiver at Harrisburg, or from our ticket receiver at Baltimore. We are notified sometimes. Of course they are* bound to be late, and if they are we are notified.”
*8 He testifies in another place that no provision had been made that he knew anything of in this case by the authorities at Harrisburg for notifying the officers in Baltimore that there were passengers upon that train who were late, and who ought to be forwarded to Washington upon the next outgoing train.
As already stated, we think this case is to be distinguished from all the cases that are cited here by counsel, and that our decision in this case will have no such effect as is anticipated by counsel — to practically break up the practice of having gates and gate-keepers in and about depots for the purpose of preventing passengers and others from going upo'n the tracks( except when they are authorized to do so for the purpose of going upon train's. Such regulations are proper, and may be enforced; but the railroad company cannot make such a regulation as that and then, by their own laches, negligence and failure to properly instruct the gatekeeper from time to time, as they should do, of the rights of other people, permit that gate-keeper to assault and insult passengers who have a right to travel on its road, and who have a right to go upon its trains.
There are quite a number of authorities to the effect that where a passenger is upon a train and has a ticket that has upon its face expired, a limited ticket for instance, a ticket for a passage on a prior date, with nothing to show that it has been extended, the conductor is justified in refusing to accept the ticket, and that the passenger under such circumstances is not justified in resisting, and if he does resist on the invitation of the conductor to leave the train or pay his fare, he can recover nothing for any force that may be used to eject him from the train, provided no more force is used than is necessary for that purpose.
There are cases cited to us where a party asked the conductor for a stop-over check, and the conductor instead of giving him a stop-over check, gave him a check which had on it, “ Good for this trip only,” with the date of the day that the check was given to the passenger. The passenger theh *9 stopped off for a few days and then went upon a train and attempted to use this check. The conductor refused to take the check, and the passenger refusing to go off the cars, or to pay fare, he was forcibly ejected by the conductor. The court held in that case that the conductor was justified in using necessary force to eject the passenger from the train.
A case is also cited where the conductor of a street car attempted to give a transfer ticket to a passenger for another line, but by accident gave a transfer to the wrong line. The passenger went upon a car of the line that he intended to travel upon, and on offering this ticket he had received as a transfer, it was refused by the conductor and he was ejected from the car'; and he brought his action. The court held that the street car company was not liable, upon the ground that the passenger had no evidence whatever of any right to travel upon that line; that the ticket which he had indicated another line entirely. We may well understand why that should be. He had no evidence of ever having had any right upon that line by virtue of any ticket which he was able to exhibit to the conductor.
Now, the geperal principle is that a party who has a right to go to any place without being regarded as a trespasser, and who does go there properly and lawfully, cannot be interrupted, so long as he does not interfere with the rights of anybody else, but simply pursues his own legal right, and that any party who does interrupt him, treat him as a trespasser, and forcibly eject him as a trespasser, is liable in law for an action for assault and battery.
But the courts have said that as a matter of public policy —in the class of cases where, although a man may have the strict legal right, he has no such evidence of his right with him as will be sufficient to demonstrate it to the conductor upon a train, in consideration of the fact that the conductor upon the train must be presumed to be ignorant of the real facts in the case and has no present opportunity of ascertaining them and must act promptly — that under such cir *10 cumstances, h for the purpose of preserving the peace and good order, a passenger who finds himself so situated should yield to the circumstances, and seek his remedy against the company if there has been any violation or breach of contract on the part of the company with him, and not compel the conductor to eject him from the train.
But we think this case is to be distinguished from all the cases which are cited by counsel for the defendant. In the first place, he was, as we' think, not in fault. That is to say, he had done nothing himself to forfeit his right, nor had he omitted to do anything which he could do, or which he was advised that he could do to perfect his right to go upon the train from Baltimore to Washington. He had purchased his ticket in Pittsburgh in good faith for a passage upon the train designated in the ticket; the railroad authorities at Pittsburgh had furnished him a train which they said was a compliance with the requirements of the ticket; and he was induced by them to take passage upon that with the assurance that he would make connection at Harrisburg, so that his passage would be continuous and without interruption to Washington; that he would simply change to the regular train at Harrisburg and when this failed, his right, as we have already asserted, in our judgment, being to take the next train, and that right being recognized from Harrisburg to Baltimore, at Baltimore, his right still remained to take the next train to Washington.
Upon the facts before recited, it is clear that the plaintiff was in no sense a trespasser in attempting to pass through the gate to the train.. It is equally clear that all the facts and circumstances which made it proper and legal for the plaintiff to go from Baltimore on the ticket purchased at Pittsburgh were known to the defendant’s agents at Harrisburg, and that it was the duty of the latter, sanctioned by their own usage and custom, to notify the proper officers at Baltimore, including the gate-keeper, of the rights of the plaintiff and others in like situation, which duty they neglected to perform.
March 14, 1892.
This action being against the defendant to recover damages resulting from an assault of its employee upon the plaintiff, it would seem to be monstrous to excuse the der fendant upon its claim that the gate-keeper was acting under proper general instructions, without any authoritative information from it of the special circumstances which gave the right to the plaintiff to go through the gate to the train, when its own neglect to properly inform the gate-keeper is the direct cause of the assault and injury. For this reason this case is to be distinguished from those cited by counsel for the defendant to which allusion has been made.

Judgment affirmed.

Note. — A motion for a rehearing was overruled,